**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

BRENDA S. STAFFORD                                                                                          PLAINTIFF

vs.                                         NO. 4:04CV00870-JTR

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                                     DEFENDANT

**MEMORANDUM AND ORDER**

Plaintiff, Brenda Stafford, has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). Both parties have submitted Appeal Briefs (docket entries #10 and #11), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On October 11, 2002, Plaintiff filed her application for DIB (Tr. 75-77), alleging an onset of disability[2] of December 31, 1997, due to degenerative disc disease.[3] (Tr. 81.) Because Plaintiff's last insured date was September 30, 2001 (Tr. 78), she was required to prove that she was disabled prior to that date in order to receive DIB.

On September 30, 2003, the Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff's claim for DIB. (Tr. 29-49, 360-362.[4]) Plaintiff was 51 at the time of the hearing and had completed the eleventh grade. (Tr. 51, 87.) Her past relevant work included jobs working the front desk at a dry cleaners, gathering address information for Pulaski County, and working as a cashier at the UALR Student Union, a position that required Plaintiff to be on her feet, with no option to sit. (Tr. 35, 82, 360.)

The ALJ considered Plaintiff's impairments by way of the familiar five step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2004). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.*

---

[2] It is well settled that the claimant has the burden of proving her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful activity. *Ingram v. Chater,* 107 F.3d 598, 601 (8th Cir. 1997). The Social Security Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[3] Plaintiff injured her back in May of 1994. (Tr. 204.)

[4] Three pages of the hearing testimony were left out of the original transcript. Subsequently, these pages were located, and a supplemental record was filed with the Court, on March 8, 2005. *See* Separately Bound Transcript containing Tr. 360-362.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, and the duration requirement is met, benefits are awarded. *Id.*

If claimant does not meet or equal a Listing, then a residual functional capacity ("RFC") assessment is made based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his decision, dated November 26, 2003, the ALJ found that Plaintiff: (1) met the insured status requirements of the Social Security Act through September 30, 2001; (2) had not engaged in substantial gainful activity since the alleged onset of her disability; (3) had degenerative disc disease, which was a "severe" impairment, but this impairment did not meet or medically equal a Listing; (4) retained the RFC for sedentary work; and (5) was unable to perform any of her past relevant work. After considering Plaintiff's RFC to perform sedentary work, her age, education, other vocational

factors, and the testimony of a vocational expert, the ALJ concluded, at step 5, that Plaintiff could make the adjustment to other jobs available in the national and local economies, including sedentary work as a cashier.[5] Thus, the ALJ held that Plaintiff was not disabled.

On July 26, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 7-10.) On August 23, 2004, Plaintiff filed her Complaint (docket entry #2) initiating this appeal.

In Plaintiff's Appeal Brief (docket entry #10), she argues that the ALJ: (1) ignored medical evidence establishing that, prior to her last insured date, she was limited to only the occasional use of her right dominant hand (*Pltf.'s App. Br.* at 12-14); (2) failed to provide a legally sufficient rationale for disregarding the medical evidence and statements provided by her treating physicians (*Pltf.'s App. Br.* at 14-18); (3) asked the vocational expert a hypothetical question that did not fully and fairly state all of Plaintiff's limitations (*Pltf.'s App. Br.* at 18-20); and (4) erred in his evaluation of her credibility (*Pltf.'s App. Br.* at 12-22). The Court will address each of these arguments separately.

First, Plaintiff argues that the ALJ ignored objective medical evidence which allegedly established that, prior to September 30, 2001, she was limited to only the occasional use of her right dominant hand. (*Pltf.'s App. Br.* at 13). In his decision, the ALJ specifically found that, prior to the expiration of Plaintiff's insured status in September 2001, there was no objective medical evidence to support a restriction of only occasional use of the right dominant hand. (Tr. 24-25.) A review of

---

[5]As indicated previously, while Plaintiff's past relevant work included a cashier position at the UALR Student Union, Plaintiff testified this job required her to stand, without a sit option. (Tr. 35-36.) As a result, the vocational expert classified Plaintiff's cashier job at UALR as "light work," which her RFC for sedentary work no longer allowed her to perform. (Tr. 360-361.)

-4-

the record reveals that substantial medical evidence supports the ALJ's conclusion that Plaintiff was not limited to only the occasional use of her right dominant hand.

Prior to September 30, 2001, the medical record reveals that Plaintiff made a few isolated complaints of right arm numbness and pain. (Tr. 207, 212, 237.) Importantly, none of those complaints appear to be supported by nerve conduction EMG studies.[6] While Dr. Ward noted in a letter dated August 2, 2000, that Plaintiff has taken "80 mg of Methadone chronically now since at least 1997," it was not until January 2002, that Dr. Ward observed that Plaintiff's complaints had "*recently* . . . become organized around her cervical spine and arm area." (Emphasis added.) (Tr. 200.) Despite her previous complaints to Dr. Ward about right arm numbness and pain, in her Work History Report, completed in October of 2002, Plaintiff stated that her hobbies included "embroidering and quilting." (Tr. 99.) This statement seems to be in direct conflict with her allegation that she was limited in the use of her dominant right hand prior to September 30, 2001.

The medical evidence established that, on December 30, 2002, Plaintiff was admitted to Baptist Medical Center in Little Rock as a result of "acute onset of right upper extremity weakness, most likely radial nerve palsy." (Tr. 308.) However, the onset of this condition was well *after* Plaintiff's last insured date.[7]

---

[6]Although the notes of Dr. Thomas M. Ward, dated May 3, 2000, conclude that Plaintiff's complaints of right upper extremity numbness show "no change form [sic] previous nerve conductions" (Tr. 207), the record does not appear to contain any nerve conduction/EMG studies of Plaintiff's upper extremities. In a letter dated August 25, 1997 (Tr. 245), Dr. Ward does refer to nerve conduction/EMG studies of nerves in Plaintiff's *lower extremities*, but these results in no way help to illuminate or document Plaintiff's complaints of numbness in her upper right extremity.

[7]Plaintiff acknowledged in her Reconsideration Disability Report that she had been paralyzed on her right side since December 30, 2002, a date well *after* her last insured date of September 30, 2001. (Tr. 110.)

Finally, on October 3, 2003, Dr. Ward noted that, sometime after her September 2003 MRI, Plaintiff suffered an infarction, which was preceded by her suffering "right upper extremity deficits pertaining to strength" which made it difficult for her to perform "bimanual tasks specifically from the standpoint of her right upper extremity." (Tr. 357.) Thus, Dr. Ward's October 3, 2003 letter appears to acknowledge that Plaintiff's difficulty in performing "bimanual tasks" with her upper extremities arose from her December 30, 2002 hospitalization for an acute event that resulted in radial nerve palsy in her right upper arm. In short, the medical evidence simply does not support Plaintiff being limited to only the occasional use of her right hand before the expiration of her insured status. Thus, the Court concludes that the ALJ did not err in failing to include a right hand limitation in his RFC determination.

Second, Plaintiff argues that the ALJ failed to provide a legally sufficient rationale for disregarding and contradicting Dr. Ward's Medical Source Statement of Ability to do Work-Related Activities. However, Dr. Ward qualified his opinion by noting that it was limited to a time period *"from* June 2003," (Tr. 307) and that the limitations in Section II of the Report were the result of the "neurological event [on December 30, 2002] of the right arm and leg." (Tr. 305-307.) Because Dr. Ward's opinion does not relate back to the relevant time period, on or before September 30, 2001, the ALJ did not err in discounting his Medical Source Statement.

Third, Plaintiff argues that the ALJ asked the vocational expert a hypothetical question that did not fully and fairly state all of Plaintiff's limitations. (*Pltf.'s App. Br.* at 18-20.) Specifically, Plaintiff contends that the ALJ's hypothetical question to the vocational expert should have included "some limitations in the use of her dominant [right] arm and hand." *Id.* at 19. As previously explained in addressing Plaintiff's first argument, during the relevant time period, the medical

evidence does not support Plaintiff being significantly limited in the use of her right hand and arm. Thus, the Court concludes that the ALJ did not err in failing to include a right hand and arm limitation in his hypothetical question to the vocational expert.

Finally, Plaintiff argues that the ALJ improperly evaluated her credibility. (*Pltf.'s App. Br.* at 12-22.) However, a review of the ALJ's decision (Tr. 22-25) reveals that, in discounting Plaintiff's credibility, he properly considered and applied the factors identified by the Court in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Thus, the Court concludes this argument is without merit.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). There is ample support in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales,* 402 U.S. at 401; *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991). The Commissioner's decision is not based on legal error.

IT IS THEREFORE ORDERED that the Commissioner's decision is affirmed and Plaintiff's claim is dismissed, with prejudice.

DATED this   8th   day of September, 2005.

                                                                                    _____
                                                                                    UNITED STATES MAGISTRATE JUDGE